IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA

FILED

01 JAN 10 PM 4:02

U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES of AMERICA,
For the Use and Benefit of
Prestige Alarm and Specialty Products, Inc.,

       Plaintiff,

v.

CV-01-AR-0129-S

LAUDERDALE CONSTRUCTION, INC., and
NOBEL INSURANCE COMPANY,

       Defendants.

## COMPLAINT

### Jurisdiction and Venue

1.     Jurisdiction is proper in this court pursuant to 40 U.S.C.A. § 270a, *et seq*, (The Miller Act).  Venue is proper in this court pursuant to 40 U.S.C.A. § 270b(b) as the contract was performed within this district.

### Parties

2.     The Use Plaintiff, Prestige Alarm and Specialty Products, Inc. ("Prestige"), is an Alabama corporation with its principal place of business in Trussville, Alabama.  At all times relevant hereto, Prestige was engaged in the business of selling, installing, and testing fire alarm equipment.

2.     Defendant Lauderdale Construction, Inc. ("LCI"), is an Alabama corporation with its principal place of business at 1700 Walnut Avenue, Anniston, Alabama, 36201.  At all times relevant hereto, LCI was engaged in the business of general contracting.

*1*

3.     Defendant Nobel Insurance Company ("Nobel") has business offices at 2296 Henderson Mill Road, Suite 402, Atlanta, Georgia 30345.  At all times relevant hereto, Nobel was engaged in the business of corporate paid suretyship.

## Factual Background

4.     LCI and the Department of Veterans Affairs ("V.A.") entered into contract number V521C-464 ("the prime contract") whereby LCI was designated the prime contractor and charged with the replacement of the existing fire alarm system of the V.A. Hospital located in Birmingham, Alabama.  LCI was required by its contract with V.A. to complete the project by August 27, 1998.

5.     Prestige and LCI entered into a subcontract ("the subcontract") on January 9, 1998, by which Prestige was to provide all materials, components, wiring, and labor necessary to replace the existing fire alarm system of the V.A. Hospital under the prime contract.  As an obligation of this subcontract, LCI was to pay Prestige $635,971.00 subject to increases or decreases due to changes or modifications to the original scope of work.  A true and correct copy of the subcontract is attached to this complaint as Exhibit A.

6.     Pursuant to 40 U.S.C. § 270a *et. seq.*, Nobel issued payment and performance bond No. STD622670, naming LCI as principal and Nobel as surety.  A copy of this payment and performance bond is attached hereto as Exhibit B.

7.     The V.A. issued a Notice to Proceed to LCI on January 20, 1998.  Prestige began work at the V.A. Hospital on or about that same date.

8.     From the commencement of its work to the present day, Prestige was and continues to be delayed, disrupted, interrupted, suspended, and impeded in its efforts to

2

perform its duties under the subcontract.  These delays and impediments were and are the direct result of LCI's failure to properly manage and supervise the construction process and its failure to comply with the terms of the prime contract and subcontract.

9.    In addition to costly delays, Prestige was directed by LCI and the V.A. to perform additional work on the project; work that was outside the original scope of work of the subcontract.  LCI has failed to pay Prestige for the additional work it performed.

10.    In addition to the delays and additional work described, supra, Prestige continues to provide at the behest of LCI and the V.A., additional work for which it continues to be uncompensated for.

11.    All conditions to this action have occurred, or have been performed, excused, or waived.

## Count I

## Breach of Contract

12.    Plaintiff Prestige realleges and incorporates by reference the allegations of paragraphs 1 through 11 above.

13.    Prestige completed its work in accordance with the subcontract it entered into with LCI.  Further, Prestige continues to undertake, at the direction of LCI and for the benefit of the V.A., work that is outside the original scope of the contract.

14.    LCI breached the subcontract by failing and refusing to pay Prestige all balances due and owed Prestige pursuant to the subcontract, plus interest and costs.

WHEREFORE, Plaintiff demands judgment against Defendants in a sum sufficient to compensate it for the damages it has sustained as a result of LCI's breach of contract, plus interest and costs of court.

3

## Count II

## Work and Labor

15.    Plaintiff Prestige realleges and incorporates by reference the allegations of paragraphs 1 through 14 above.

16.    Defendants have failed to pay Prestige the sums owed it for work and labor.

WHEREFORE, Plaintiff demands judgment against the defendants in an amount sufficient to compensate it for the work and labor which is due and unpaid, plus interest and court costs.

## Count III

## Unabsorbed Overhead

17.    Plaintiff Prestige realleges and incorporates by reference the allegations of paragraphs 1 through 16 above.

18.    Prestige claims that the actions of the defendants have caused it to suffer damages as a result of unabsorbed overhead costs.

WHEREFORE, Plaintiff demands judgment against the defendants in an amount sufficient to compensate it for the unabsorbed overhead it has incurred as a result of unpaid work and labor, plus interest and court costs

## Count IV

## Breach of Payment Bond Obligation

19.    Plaintiff Prestige realleges and incorporates by reference the allegations of paragraphs 1 through 18 above.

20.    Prestige has provided labor and materials to the project for which it has not been paid.

21.     Prestige timely notified Nobel and LCI that Prestige had not been paid for labor and materials provided to the project.

22.     Nobel and LCI have breached their obligations under the payment bond by failing and refusing to pay Prestige sums justly due and owed for labor and materials Prestige provided to the project, plus interest.

WHEREFORE, Prestige demands judgment against Nobel and LCI for an amount not less than $225,000.00 for all sums due for labor and materials, interest, and further relief as this court deems appropriate.

_____
EDWARD P. MEYERSON

_____
WILLIAM PATTON HAHN

OF COUNSEL:

BERKOWITZ, LEFKOVITS,
   ISOM & KUSHNER
A Professional Corporation
420 North 20th Street,
1600 SouthTrust Tower
Birmingham, AL  35203
(205) 328-0480

# Lauderdale Construction, Inc.

*1700 Walnut Ave.*
*Anniston, Alabama 36201*
*(205) 236-0021 Fax: (205) 231-0075*

## *Sub-Contract Conditions*

1. Prior to the initiation of any work and/or payment of any invoice, the following items must be delivered to this office:
   a. One properly executed copy of the Sub-Contract agreement.
   b. One properly executed copy of the contract conditions.
   c. A current certificate of insurance indicating carriage of Worker's Compensation and General Liability     Insurance (if carried).
   d. Vendor's Federal ID Number or Social Security Number.
2. Proper submission of invoices will result in expeditious payment.
   a. All invoices must be addressed to Lauderdale Construction, Inc. and sent directly to our office in Anniston, Al.
   b. It is the Vendor's responsibility to submit invoices to this office.
   c. Each invoice must indicate the job name and the sub-contract number.
   d. If insurance is not carried, invoices must be broken down into material and labor cost.
3. *All sub-contractors are required to carry Worker's Compensation and General Liability Insurance. Failure to provide certificates of insurance will result in a standard deduction on the labor portion of the invoice for coverage by Lauderdale Construction, Inc. If no breakdown is provided, it will be assumed that the entire invoice is labor.
4. Normal payment terms are net payment within 30 days from receipt of correctly submitted invoice. Special payment terms must be specified and approved in writing prior to any payment made under special terms.
5. Lien waivers from Sub-Contractors will be required with payment and a final lien waiver is required before final payment is made. Lien waivers will be handled in one of two ways:
   a. Submit completed lien waiver with each invoice.
   b. Sign lien waiver when picking up check.
6. It is the responsibility of the Sub-Contractor to submit certified payrolls to this office weekly from the week that you start work until your work is complete. If you do not perform any work during a week please notify our office that no work was performed.
7. Compliance with OSHA regulations and guidelines is required.
8. Changes to this agreement must be preceded by written change order authorization.

Vendor: Prestig Alarm & Specialty Product Inc. / Lauderdale Construction, Inc.

By: James P. Hardin                    Sub-Contract No. **V521c-464-S1**

Federal ID #: _____

\* Workman's Compensation/ General Liability Coverage __✓__ YES ___ NO (Check One)

# *Lauderdale Construction, Inc.*

**1700 Walnut Avenue**
**Anniston, Alabama 36201**
**Phone (205) 236-0021  Fax (205) 231-0075**

## *Sub-Contract Agreement*

**Sub-Contract For:** Fire Alarm
**Sub-Contract Number:** V521c-464-S1

     This Agreement, made this 9th day of January, 1998 by and between **Lauderdale Construction, Inc.** of Anniston, Alabama, hereinafter called the **Contractor**, and **Prestige Alarm & Specialty Products, Inc.** P.O. Box 93, Trussville, Alabama 35173  hereinafter called the **Sub-contractor** .

Witnesseth:

     That for considerations, covenants and agreements hereinafter set forth in this agreement, the parties hereinabove named agree as follows:

1.  The Contractor has heretofore entered into a written contract with the **Veterans Affairs Medical Center, Birmingham Alabama** hereinafter called the **Owner**, whereby the Contractor has obligated itself to furnish labor, and materials to do certain work under a Contract No. **Replace Fire Alarm System, VA Medical Center, Birmingham, Alabama** ,  between said contractor and the Owner, which prime contract was entered into on the 8th day of  January , 1998. Said prime contract, together with all specifications, drawings, plans, and conditions and any and all other documents referred to in said prime contract are by reference thereto made a part of this Subcontract Agreement as fully as though copied herein.

2.  The Subcontractor hereby agrees to furnish all labor and materials and to perform all work in accordance with the conditions, specifications, drawings, and plans and undertakings between the Contractor and the Owner and the Contractor agrees to pay the Subcontractor for the performance of this contract as follows:

     Provide all necessary labor, materials, equipment, tools, taxes, supervision, field engineering, fees, licenses, and all else required to complete the **Replace Fire Alarm System Project.** Under this contract the subcontractor shall completely prepare site for building operations, including demolition, and removal of existing fire alarm system, and furnish labor and materials and perform work for project located at the Department of Veterans Affairs Medical Center (DVAMC), 700 19th Street South, Birmingham, Alabama 35233, as required by drawings and specifications. The subcontractor is to install a new fully addressable fire alarm system and components, and associated electrical wiring, throughout, the entire medical center as required by the specifications and drawings.

**Article 1 -** The said Subcontractor hereby agrees to furnish all materials; all required shop and erection drawings; and required samples; all equipment together with all labor under supervision satisfactory to the Architect/Engineer, Owner, and the Contractor, to complete the part or parts of the work required of the contract in all respects as is therein required of the Contractor, and all work incidental thereto including cost of all water and electric current used by the Subcontractor and proportionate cost of operating hoisting equipment furnished by contractor, if used by subcontractor.

**Article 2** - The Subcontractor hereby certifies that he has examined all the plans and specifications prepared for the Owner for the entire work, of which the work covered by this subcontract is a part. Said plans and specifications are hereby referred to and made a part of this subcontract. The subcontractor will not sublet, assign, or transfer this subcontract or any part hereof without the written consent of the contractor. The subcontractor and his subcontractors will be and are bound by any and all parts of said plans and specifications insofar as they relate in any part or in any way to the work undertaken herein.

**Article 3** - It is understood and agreed by and between the parties hereto, that the work included in this subcontract is to be done under the direction of said contracting officer, and that his decisions as to the true construction and meaning of the plans and specifications shall be final.

**Article 4** - The subcontractor hereby agrees to make any and all changes, and furnish the materials and perform the work, that the contractor may require without nullifying this agreement, at a reasonable addition to, or deduction from, the contract price, hereinafter named, and prorate to the same , i.e., figured on unit price where applicable. No alterations or changes shall be made, except upon the written order to the contractor. The amount paid by the contractor or allowed by the subcontractor by virtue of such alterations shall be stated in such order, if such amount can be agreed upon, together with the order required above, and the final determination of such amount shall be referred to a Board of Arbitration, selected as provided for in Article 16.

**Article 5** - The subcontractor shall provide sufficient, safe, and proper facilities at all times for the inspection of the work by the contractor, contracting officer, or their authorized representatives, and shall within twenty-four (24) hours after receiving written notice take down all portions of the work, and remove from the building and grounds all material, whether worked or unworked, which the contracting officer shall condemn as unsound or improper as failing in any way to conform to the plans and specifications, and shall make good all work so condemned, and all other work of the contractor or other subcontractors damaged or destroyed in the making good of such work.

**Article 6** -  The subcontractor hereby agrees that the work under this subcontract is to be provided for immediately, and shall began when notified by the contractor, and completed in accordance with the project schedule.

It is agreed that the work will be carried on as required by the contractor, promptly and efficiently, and without delaying other branches of work; and if necessary as contractor may indicate, certain parts of the work shall be persecuted in preference to others in order to secure the execution of this work at and within the time specified. It is hereby distinctly agreed that damages arising from the nonfulfillment of this contract as regards time, shall be deducted from the contract price.

Should the subcontractor be delayed in the prosecution or completion of the work by the act, neglect, or default of the contracting officer, or of the contractor, or by the damaged caused by fire or other casualty for which the subcontractor has been delayed, but no allowance or extension shall be made unless the claim therefore is presented in writing to the contractor within forty-eight (48) hours of the occurrence of such delay.

**Article 7** - Should the subcontractor at anytime refuse or neglect to supply a sufficient number of properly skilled workmen, or a sufficient quantity of materials of proper quality, or fail in any respect to prosecute the work covered by this contract, with diligence and promptness, or fail in the performance of any of the agreements herein contained, the contractor may, at his option, after forty-eight (48) hours written notice to the subcontractor, provide any such labor and materials, and deduct the cost thereof from any money then due or thereafter to become due to the subcontractor under this contract; or the contractor may at his option, terminate the employment of the subcontractor for the said work, and shall have the right to enter upon the premises and take possession, for the purpose of completing the work included under the subcontract, of all the materials and appliances thereon, and may employ any other person or persons to finish the work and provide the material therefore; and in case of such discontinuance of the employment by the said contractor, said subcontractor shall not be entitled to receive any further payments until the

work shall be wholly finished; at which time, if the unpaid balance of the amount to be paid under this subcontract exceeds the expenses incurred by the contractor by the contractor finishing the work , then the subcontractor shall pay the difference to the contractor. The expense incurred by the contractor, as herein provided, either furnishing materials or finishing the work , and any damages incurred by such default shall be chargeable to, and paid by the said subcontractor, and the contractor shall have a lien upon all materials, tools, and appliances, taken possession of, as foresaid to secure the payment thereof.

**Article 8** - The subcontractor hereby agrees to save and indemnify and keep harmless the contractor, against all liability, claims, judgments or demands for damage arising from accidents to persons or property whether occasioned by said subcontractor, his agents or employees, provided said accidents occur in connection with the subcontractor's work or are occasioned with other work; and the said subcontractor will defend any and all suits which maybe brought against the contractor on account of any such accidents, and will make good to and reimburse the contractor for any expenditures that said contractor may make by reason of such accident.

In order to insure the fulfillment of the foregoing, the subcontractor hereby agrees to carry Employers and Public Liability Insurance in any amount not less than the required of the contractor by the specifications, and also such insurance as is required to cover Workman's Compensation as required by the State or Federal Laws.

The subcontractor also agrees to furnish the contractor with suitable evidence that such insurance has been taken out, and if the subcontractor shall sublet any of his work to a third party, he agrees to see that the third party shall carry insurance, as mentioned above. A certificate of such insurance from companies issuing same shall accompany and become a party of this contract.

**Article 9** - The said subcontractor is to insure his own risk, against fire, theft, sabotage, and windstorms in and about the building, unless special agreement is made to the contrary said insurance to continue in force until the building is accepted by the owner.

**Article 10** - The subcontractor shall remove from the premises as often as necessary or as maybe directed by the contracting officer, all rubbish, debris, and surplus materials which may accumulate from the prosecution of the work covered by this subcontractor, and should the subcontractor fail; to do so upon proper notice, then the contractor at his option cause the same to be removed and charge the expense of such removal to the said subcontractor.

**Article 11** - It is hereby made a part of this contract that with respect to labor requirements and wage scale, the subcontractor will comply with all statutory and specification requirements, will pay all taxes assessed against his labor, and will also comply with all statutory and specification requirements as to labor reports, payroll taxes, and the like.

**Article 12** - The said contractor hereby agrees to pay to the said subcontractor for such labor and materials herein undertaken to be done and furnished for the work as mentioned above for the sum of: **$635,971.00 (six hundred thirty five thousand, nine hundred seventy one and 00/100 dollars.)**

Subject to additions and deductions as hereinbefore provided. Partial payments shall be paid by the contractor to the subcontractor as the work progresses, based on estimates and certificates of the contractor **0 %** to be retained. Final payment shall be made within 15 days after completion of the work included in this subcontract, and upon written acceptance of the owner, and full payment therefore by the owner. all payments are contingent upon evidence that all claims for labor and material are settled.

All subcontractor application for payments need to be in Lauderdale Construction, Inc. office no later than the twenty-fifth (25th) of each month, and payment will be made within three (3) days from the time Lauderdale Construction, Inc. receives its payment from the Owner.

Article 13 - The said subcontractor agrees to turn work over to the contractor in good condition, and free and clear from all claims, encumbrances and all liens, growing out of the performance of this subcontract, and in the event of the failure of the subcontractor during the progress of said work, or at any time thereafter, to pay for all materials and labor used in the prosecution of the said work, the contractor may at his option and without notice to the subcontractor prior thereto, pay all such claims for labor, materials and charge the amount to the said subcontractor. In case suit to establish lien is brought by any person, firm, or corporation employed by or furnishing materials to the said subcontractor under this subcontract, the subcontractor will at his own cost and expense including attorney's fees defend such suit and pay such liens established in court.

Said subcontractor shall, as often as required in writing by the owner, or the contractor, make out and give to said owner or contractor sworn statement of persons furnishing labor or materials to the subcontractor without special request therefore, each time the subcontractor receives payment from the contractor under this subcontract, and shall accompany requisition for same.

Like statement shall be required from any and all subcontractor of the subcontract.

Article 14 - It is further mutually agreed between the parties hereto that no payment made under this contract, except the final payment, shall be conclusive evidence of the performance of this subcontract, either in whole or in part and that no payment shall be construed to be an acceptance of defective work or improper materials.

Article 15 - The subcontractor hereby agrees to procure and pay for all permits and licenses, sales and other taxes, necessary to carry on the work covered by this contract, in conformity with all state, federal, and municipal laws.

Article 16 - If any questions shall arise concerning the work under this subcontract, or concerning the settlements of accounts in connection therewith, either party hereto may demand immediate settlement by reference to a Board of Arbitration, to consist of one person selected by the contractor, one person selected by the subcontractor and these two to select a third; in case these two fail to select a third within three (3) days he shall be the owner or his authorized representative, to represent the party failing to name one. The written decision of this Board shall be final and binding on both parties hereto. The losing party hereto shall pay the expense of such reference.

Article 17 - Subcontractor shall give bond if requested, payable to the contractor, in the sum of 100 % of the subcontract amount with the Surety thereon satisfactory to the contractor, for the faithful performance of this subcontract.

In witness hereof, the parties hereto have hereunto set their hand and seals the day and year first written above, this instrument being executed in duplicate, with each party retaining a copy.

*Prestige Alarm will provide bond to Lauderdale Construction with in 5 days or contract will be void.*

Witness

Lauderdale Construction, Inc.

L. B. Lauderdale, President

Subcontractor

By

Witness

4  Subcontract Agreement V521c-464-S1

## ADDENDUM TO SUB-CONTRACT AGREEMENT

CONTRACTOR:          LAUDERDALE CONSTRUCTION, INC.

SUB-CONTRACTOR:      PRESTIGE ALARM & SPECIALITY PRODUCTS, INC.
SUB·CONTRACTOR NO·  V52IC·464·51
CONTRACT DATE:

 The above referenced parties being the Contractor and Sub-Contractor have simultaneously executed a Sub-Contract Agreement dated January 9, 1998, with certain sub-contract conditions. This Agreement is an addendum to the Sub-Contract Agreement dated January 9, 1998, and for a valuable consideration the Contractor and Sub-Contractor agree as follows:

 1. Contractor will advance 5% of the contract price within seven (7) days of execution of the Sub-Contract.

 2. Contractor pre-approves Haymaker Electric, Ltd. as a Sub-Contractor of Prestige Alarm & Speciality Products, Inc. for the purpose of providing wiring, conduit, labor, installation and engineering services. Contractor also approves that Haymaker will be acting supervisor for Prestige Alarm & Specialty Products, Inc. in regard to this job.

 3. The contract price as established in the Sub-Contract Agreement is based upon plans and specifications submitted by the Contractor to the Sub-Contractor. The Contractor acknowledges and agrees that any specifications, drawings and plans submitted to the Sub-Contractor for bid purposes that do not comply with ADA regulations, local, state and federal regulations, and other applicable regulations shall cause change orders. The Sub-Contractor shall notify the Contractor immediately upon recognizing any violations in the said plans and specifications and change orders will be negotiated based upon reasonable and necessary expenses.

 4. The Sub-Contractor shall provide sufficient, safe, and proper facilities at all time for he inspection of the work by the Contractor, contracting officer, or their authorized representatives, and shall within forty-eight (48) hours after receiving written notice take down all portions of the work, and remove from the building and grounds all material, whether worked or unworked, which the contracting officer shall condemn as unsound or improper as failing in any way to conform to the plans and specifications, and shall make good all work so condemned, and all other work of the Contractor or other Sub-Contractors damaged or destroyed in the making good of such work.

1

F:\DATA\CLIENT\CORP\HARDEN.ED\CONTRACT.ADD

5.  The Contractor herein extends to the Sub-Contractor nine (9) months from the date of starting this Contract for completion.  The completion date may be extended by any delays due to inclement weather or the Sub-Contractor not being able to work upon the building site.  The Sub-Contractor shall notify and keep the Contractor informed within three (3) days of any delays that are beyond the control of the Sub-Contractor as referred to herein.

6.  The Sub-Contractor shall not be responsible to replace or repair any necessary damage done to the existing building due to the installation as required in the Sub-Contract Agreement.  The Contractor acknowledges that the Contractor is responsible for re-construction costs and to repair any necessary damage done to the building site for the installation as called for herein.

7.  The Contractor acknowledges that the Sub-Contractor submitted his bid and the contract price is based upon the plans and specifications as presented.  Any necessary change orders as referred to above that are required to bring the plans and specifications into compliance with local, state and federal laws as well as ADA regulations shall be submitted to the Contractor for approval.  The Contractor herein acknowledges and agrees to indemnify and save the Sub-Contractor harmless for any actions by the Contractor in breach of this Agreement including any costs of litigation and reasonable attorneys fees.

8.  The Contractor herein agrees to pay within thirty (30) days of receipt any invoice submitted by the Sub-Contractor and especially for any equipment necessary for installation including wiring and conduit.  If payment is not received within the said 30 day period, there will be a 5% late payment penalty.  Work to be performed will be billed by percentage of work completed.  If payment not received within said time frame, work shall cease.  Contractor will not hold Sub-Contractor responsible for any delays because of unpaid balances.

9.  Contractor agrees to buy all equipment up front including all items listed on attached Exhibit "A" and also agrees to purchase radios that will work to allow communication from floor to floor.

10.  All other items in the original Sub-Contract Agreement and the Sub-Contract conditions that are not modified as referenced above remain in full force and effect.

2

SUB-CONTRACTOR:

PRESTIGE ALARM & SPECIALITY
PRODUCTS, INC.

By :   ~~James E. Harden~~
       Eddie Harden, President

CONTRACTOR:

LAUDERDALE CONSTRUCTION, INC.

By:    ~~L. B. Lauderdale~~
       L.B. Lauderdale, President

3

# Prestige Alarm
# & Specialty Products, Inc.

Post Office Box 93
Trussville, Alabama 35173
(205) 853-9381 Home office
(205) 865-9454 Fax

## QUOTE DOCUMENT

| | | | | |
|---|---|---|---|---|
| DATE | 9/15/97 | | PHONE # | |
| TO | Laderdale Construction | | LOCATION | |
| ADDRESS | Re: VA Hospital | | CONSULTANT | Eddie Harden |

| DESCRIPTION | COST | | NOTES: |
|---|---|---|---|
| 1 Equipment | $212,177.00 | See breakdown Addendum's | |
| 2 Prestige Alarm Labor | $21,000.00 | | PLEASE BE ADVISED: |
| 3 Factory Engineering & Testing | $15,000.00 | | I. |
| 4 Bond | 7000 | | This quote being submitted to |
| | | | Laderdale Construction only includes |
| | | | the parts & labor as specified in |
| | | | Addendum's I & II. Any additions will |
| | | | be subject to a change order. |
| | | | |
| | | | II. |
| | | | This quote is subject to approval by the |
| | | | Authority Having Jurisdiction (AHJ). |
| Cost Subtotal | $255,177.00 | | |
| Overhead (10%) | $25,517.70 | | III. |
| Profit (15%) | $38,276.55 | | This quote is good for thirty (30) days. |
| Sales Cost on Parts | $318,971.25 | | |
| | | | |
| Wire, conduit etc. | $120,000.00 | See breakdown Addendum's II | |
| Labor electrical | $200,000.00 | See breakdown Addendum's II | |
| Bond | $11,000.00 | | |
| | | | |
| Total Cost on Parts and Labor | $ ~~649,971.25~~ | | |
| | 635,971.00 | | Jedd 2-4-98 |

Quote DOES NOT include:
1. Superintendent
2. Cutting and repairing walls to run wire
3. Any parts, items, material, etc. not included on specs.
4. Any parts, items, material, etc. not included on blue prints.

2

# Prestige Alarm
# & Specialty Products, Inc.

Post Office Box 93
Trussville, Alabama 35173
(205) 853-9381 Home office
(205) 865-9454 Fax

## QUOTE DOCUMENT

| | | | | |
|---|---|---|---|---|
| DATE | 9/15/97 | | PHONE # | |
| TO | Laderdale Construction | | LOCATION | |
| ADDRESS | Re: VA Hospital | | CONSULTANT | Eddie Harden |

| DESCRIPTION | COST | | NOTES: |
|---|---|---|---|
| 1 Equipment | $212,177.00 | See breakdown Addendum's | |
| 2 Prestige Alarm Labor | $21,000.00 | | **PLEASE BE ADVISED:** |
| 3 Factory Engineering & Testing | $15,000.00 | | I. |
| 4 Bond | 7000 | | This quote being submitted to |
| | | | Laderdale Construction only includes |
| | | | the parts & labor as specified in |
| | | | Addendum's I & II.  Any additions will |
| | | | be subject to a change order. |
| | | | |
| | | | II. |
| | | | This quote is subject to approval by the |
| | | | Authority Having Jurisdiction (AHJ). |
| Cost Subtotal | $255,177.00 | | |
| Overhead (10%) | $25,517.70 | | III. |
| Profit (15%) | $38,276.55 | | This quote is good for thirty (30) days. |
| Sales Cost on Parts | $318,971.25 | | |
| | | | |
| Wire, conduit etc. | $120,000.00 | See breakdown Addendum's II | |
| Labor electrical | $200,000.00 | See breakdown Addendum's II | |
| Bond | $11,000.00 | | |
| | | | |
| Total Cost on Parts and Labor | $ ~~649,971.25~~ | | |

635, 971.00  *Jeff 2-4-98*

**Quote DOES NOT include:**
1. Superintendent
2. Cutting and repairing walls to run wire
3. Any parts, items, material, etc. not included on specs.
4. Any parts, items, material, etc. not included on blue prints.

## EXHIBIT "A"

### PARTS LIST

| DESCRIPTION | STATUS | TOTAL ITEMS QUOTED |
|---|---|---|
| Manual Pull Station | Replace | 118 |
| Smoke Detector | Replace | 292 |
| Thermal Detector | Replace | 13 |
| Duct Detector | Replace | 55 |
| Strobe Light | Replace | 245 |
| Fire Alarm Speaker | New | 303 |
| Fire Alarm Control Panel | New | 1 |
| Zone Control Expander Module | New | 3 |
| LCD Annunciator Panel | New | 15 |
| Audio Voice Link | New | 1 |
| Terminal Cabinet | New | 13 |
| Monitor & Keyboard Terminal | New | 1 |
| Printer | New | 1 |
| Modems | New | 0 |
| Isolator Module | New | 13 |
| Monitor Module | New | 176 |
| Control Module | New | 90 |
| Auxiliary Status Contact | New | 0 |
| Fire Pump Controller | | 0 |
| Telephone Outlet | | 0 |

Total Items:   1,340
Total Amount:      $212,177.00

# NOBEL INSURANCE COMPANY

**622670**

## GENERAL POWER OF ATTORNEY

**KNOW ALL MEN BY THESE PRESENTS,** That NOBEL INSURANCE COMPANY has made, constituted and appointed, and by these presents does make, constitute and appoint

### James E. Tatum, Lee Ann Franklin, or Tammy Tidwell

its true and lawful attorney-in-fact, for it and in its name, place, and stead to execute on behalf of the said Company, as surety, bonds, undertakings and contracts of suretyship to be given to

## ALL OBLIGEES

provided that no bond or undertaking or contract of suretyship executed under this authority shall exceed in amount the sum of

**\*\*\*\*\*\*\*\*\*\*\*\*Three million five hundred thousand dollars ($3,500,000)\*\*\*\*\*\*\*\*\*\*\*\***

This Power of Attorney is granted and is signed and sealed by facsimile under and by the authority of the following Resolution adopted by the Board of Directors of the Company on the 24th day of August, 1995.

"RESOLVED, that the Chairman of the Board, the Vice Chairman of the Board, the President, an Executive Vice President or a Senior Vice President or a Vice President of the Company, be, and that each or any of them is, authorized to execute Powers of Attorney qualifying the attorney-in-fact named in the given Power of Attorney to execute in behalf of the Company, bonds, undertakings and all contracts of suretyship; and that an Assistant Vice President, a Secretary or an Assistant Secretary be, and that each or any of them hereby is, authorized to attest the execution of any such Power of Attorney, and to attach thereto the seal of the Company.

FURTHER RESOLVED, that the signatures of such officers and the seal of the Company may be affixed to any such Power of Attorney or to any certificate relating thereto by facsimile, and any such Power of Attorney or certificate bearing such facsimile signatures or facsimile seal shall be valid and binding upon the Company when so affixed and in the future with respect to any bond, undertaking or contract of suretyship to which it is attached."

In Witness Whereof, NOBEL INSURANCE COMPANY has caused its official seal to be hereunto affixed, and these presents to be signed by one of its Vice Presidents and attested by one of its Assistant Vice Presidents this 1st day of October, 1995.

Attest:

NOBEL INSURANCE COMPANY
By



William Osceola Gordon, Assistant Vice President

Emil B. Askew, Vice President

**STATE OF GEORGIA**

**COUNTY OF DEKALB** } SS:

On this 1st day of October, 1995, before me personally came Emil B. Askew, to me known, who being by me duly sworn did depose and say  that he is a Vice President of NOBEL INSURANCE COMPANY, the corporation described in and which executed the above Instrument;  that he knows the seal of the said corporation; that the seal affixed to the said Instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation and that he signed his name thereto by like order.

OFFICIAL SEAL
LENORA N. CAPE
NOTARY PUBLIC
MY COMMISSION EXPIRES
AUGUST 3, 1998

Lenora N. Cape
NOTARY PUBLIC
My Commission Expires August 3, 1998

### CERTIFICATE

I, the undersigned, an Assistant Secretary of NOBEL INSURANCE COMPANY, a Texas corporation, DO HEREBY CERTIFY that the foregoing and attached Power of Attorney remains in full force and has not been revoked; and furthermore that the Resolution of the Board of Directors, set forth in the said Power of Attorney, is now in force.

Signed and sealed at the city of Atlanta in the State of Georgia. Dated the       **9TH**       day of       **JANUARY**       , 1998   .



Charles B. Cape, Assistant Secretary

## CORPORATE SURETY(IES) (Continu

| | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | |
|---|---|---|---|---|---|
| **SURETY B** | SIGNATURE(S) 1. | 2. | | | Corporate |
| | NAME(S) & TITLE(S) (Typed) 1. | 2. | | | Seal |

| | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | |
|---|---|---|---|---|---|
| **SURETY C** | SIGNATURE(S) 1. | 2. | | | Corporate |
| | NAME(S) & TITLE(S) (Typed) 1. | 2. | | | Seal |

| | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | |
|---|---|---|---|---|---|
| **SURETY D** | SIGNATURE(S) 1. | 2. | | | Corporate |
| | NAME(S) & TITLE(S) (Typed) 1. | 2. | | | Seal |

| | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | |
|---|---|---|---|---|---|
| **SURETY E** | SIGNATURE(S) 1. | 2. | | | Corporate |
| | NAME(S) & TITLE(S) (Typed) 1. | 2. | | | Seal |

| | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | |
|---|---|---|---|---|---|
| **SURETY F** | SIGNATURE(S) 1. | 2. | | | Corporate |
| | NAME(S) & TITLE(S) (Typed) 1. | 2. | | | Seal |

| | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | |
|---|---|---|---|---|---|
| **SURETY G** | SIGNATURE(S) 1. | 2. | | | Corporate |
| | NAME(S) & TITLE(S) (Typed) 1. | 2. | | | Seal |

| BOND PREMIUM ▶ | RATE PER THOUSAND $ | TOTAL $ |
|---|---|---|

## INSTRUCTIONS

1. This form is authorized for use in connection with Government contracts. Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of the approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)"

on the face of the form insert only the letter identification of the sureties.

(b) Where individual sureties are involved, a complete Affidavit of Individual Surety (Standard Form 28), for each individual surety shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning its financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

BOND NO. F  522670

| **PAYMENT BOND**<br>(See instructions on reverse) | DATE BOND EXECUTED (must be same or later than date of contract)<br><br>JANUARY 9, 1998 | FORM APPROVED OMB NO.<br><br>9000-0045 |
|---|---|---|

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (VRS), Office of Federal Acquisition Policy, GSA, Washington, D.C. 20405; and to the Office of Management and Budget, Paperwork Reduction Project (9000-0045), Washington, D.C. 20503.

| PRINCIPAL (Legal name and business address) | TYPE OF ORGANIZATION ("X" one) | | |
|---|---|---|---|
| LAUDERDALE CONSTRUCTION COMPANY, INC.<br>1700 WALNUT AVENUE<br>ANNISTON, AL  36201 | ☐ INDIVIDUAL | ☐ PARTNERSHIP | |
| | ☐ JOINT VENTURE | ☒ CORPORATION | |
| | STATE OF INCORPORATION<br>ALABAMA | | |

| SURETY(IES) (Name(s) and business address(es)) | PENAL SUM OF BOND | | | |
|---|---|---|---|---|
| NOBEL INSURANCE COMPANY<br>8001 LBJ FREEWAY<br>DALLAS, TX  75251-1301 | MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
| | 000 | 379 | 000 | 00 |
| | CONTRACT DATE | CONTRACT NO. | | |
| | 1/8/98 | V521C-464 | | |

OBLIGATION:

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

CONDITIONS:

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

WITNESS:

The principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

| LAUDERDALE CONSTRUCTION COMPANY, INC. | | PRINCIPAL | | | |
|---|---|---|---|---|---|
| SIGNATURE(S) | 1. | 2. | 3. | | |
| | (Seal) | (Seal) | (Seal) | | Corporate |
| NAME(S) &<br>TITLE(S)<br>(Typed) | 1  L. B. LAUDERDALE<br>PRESIDENT | 2 | 3 | | Seal |

| | INDIVIDUAL SURETY(IES) | | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. | 2.<br>(Seal) | | (Seal) |
| NAME(S)<br>(Typed) | 1. | 2. | | |

| | CORPORATE SURETY(IES) | | | |
|---|---|---|---|---|
| SURETY A | NAME &<br>ADDRESS | NOBEL INSURANCE COMPANY<br>8001 LBJ FREEWAY, DALLAS, TX  75251-1301 | STATE OF INC.<br>TEXAS | LIABILITY LIMIT<br>$379,000.00** |
| | SIGNATURE(S) | 1. | 2 | | Corporate |
| | NAME(S) &<br>TITLE(S)<br>(Typed) | 1. LEE ANN FRANKLIN<br>ATTORNEY-IN-FACT | 2 | | |

| CORPORATE SURETY(IES) (Continued) | | | |
|---|---|---|---|

**SURETY B**

| NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ |
|---|---|---|---|
| SIGNATURE(S) | 1. | 2. | Corporat |
| NAME(S) & TITLE(S) (Typed) | 1. | 2. | Seal |

**SURETY C**

| NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ |
|---|---|---|---|
| SIGNATURE(S) | 1. | 2. | Corporat |
| NAME(S) & TITLE(S) (Typed) | 1. | 2 | Seal |

**SURETY D**

| NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ |
|---|---|---|---|
| SIGNATURE(S) | 1. | 2. | Corporat |
| NAME(S) & TITLE(S) (Typed) | 1. | 2. | Seal |

**SURETY E**

| NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ |
|---|---|---|---|
| SIGNATURE(S) | 1. | 2. | Corpu |
| NAME(S) & TITLE(S) (Typed) | 1 | 2. | Seal |

**SURETY F**

| NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ |
|---|---|---|---|
| SIGNATURE(S) | 1. | 2. | Corpu |
| NAME(S) & TITLE(S) (Typed) | 1. | 2. | Seal |

**SURETY G**

| NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ |
|---|---|---|---|
| SIGNATURE(S) | 1. | 2. | Corp |
| NAME(S) & TITLE(S) (Typed) | 1. | 2. | |

## INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under the Act of August 24, 1935, 49 Stat. 793 (40 U.S.C. 270a-270e). Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of the approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)"

on the face of the form, insert only the letter identif: the sureties.

(b) Where individual sureties are involved, a co Affidavit of Individual Surety (Standard Form 28) individual surety, shall accompany the bond. The Gover: require the surety to furnish additional substantiating i: concerning their financial capability.

4. Corporations executing the bond shall affix their seals. Individuals shall excute the bond opposite "Corporate Seal", and shall affix an adhesive seal if : Maine, New Hampshire, or any other jurisdiction requir: seals.

5. Type the name and title of each person signing ii the space provided.

**BOND NO. STD622670**

| PERFORMANCE BOND<br>(See instructions on reverse) | DATE BOND EXECUTED (the same or later than date of contract)<br><br>**JANUARY 9, 1998** | FORM APPROVED OMB NO.<br><br>**9000-0045** |
|---|---|---|

Public reporting burden for this collection of information is estimated to everage 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (VRS), Office of Federal Acquisition Policy, GSA, Washington, D C. 20405, and to the Office of Management and Budget, Paperwork Reduction Project (9000-0045), Washington, D.C. 20503.

| PRINCIPAL (Legal name and business address)<br><br>LAUDERDALE CONSTRUCTION COMPANY, INC.<br>1700 WALNUT AVENUE<br>ANNISTON, AL 36201 | TYPE OF ORGANIZATION ("X" one)<br><br>☐ INDIVIDUAL   ☐ PARTNERSHIP<br><br>☐ JOINT VENTURE   ☒ CORPORATION<br><br>STATE OF INCORPORATION<br>ALABAMA |
|---|---|

| SURETY(IES) (Name(s) and business address(es))<br>NOBEL INSURANCE COMPANY<br>8001 LBJ FREEWAY<br>DALLAS, TX 75251-1301 | PENAL SUM OF BOND | | | |
|---|---|---|---|---|
| | MILLION(S)<br>000 | THOUSAND(S)<br>758 | HUNDRED(S)<br>000 | CENTS<br>00 |
| | CONTRACT DATE<br>1/8/98 | CONTRACT NO.<br>V521C-464 | | |

**OBLIGATION:**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**

The principal has entered into the contract identified above.

**THEREFORE:**

The above obligation is void if the Principal —

(a)(1) Performs and fulfills all the undertakings, covenants, terms, conditions, and agreements of the contract during the original term of the contract and any extensions thereof that are granted by the Government, with or without notice to the Surety(ies), and during the life of any guaranty required under the contract, and (2) performs and fulfills all the undertakings, covenants, terms conditions, and agreements of any and all duly authorized modifications of the contract that hereafter are made. Notice of those modifications to the Surety(ies) are waived.

(b) Pays to the Government the full amount of the taxes imposed by the Government, if the said contract is subject to the Miller Act, (40 U.S.C. 270a-270e), which are collected, deducted, or withheld from wages paid by the Principal in carrying out the construction contract with respect to which this bond is furnished.

**WITNESS:**

The Principal and Surety(ies) executed this performance bond and affixed their seals on the above date.

| LAUDERDALE CONSTRUCTION COMPANY, INC. | | PRINCIPAL | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. | 2.<br>(Seal) | 3.<br>(Seal) | (Seal) |
| NAME(S) &<br>TITLE(S)<br>(Typed) | 1. L. B. LAUDERDALE<br>PRESIDENT | 2. | 3. | Corporate<br>Seal |

| INDIVIDUAL SURETY(IES) | | | |
|---|---|---|---|
| SIGNATURE(S) | 1 | 2.<br>(Seal) | (Seal) |
| NAME(S)<br>(Typed) | 1 | 2 | |

| CORPORATE SURETY(IES) | | | | |
|---|---|---|---|---|
| NAME &<br>ADDRESS | NOBEL INSURANCE COMPANY<br>8001 LBJ FREEWAY, DALLAS, TX 75251-1301 | STATE OF INC.<br>TEXAS | LIABILITY LIMIT<br>$ 758,000.00** | |
| SIGNATURE(S) | 1 | 2 | | Corporate<br>Seal |
| NAME(S) &<br>TITLE(S)<br>(Typed) | 1. LEE ANN FRANKLIN<br>ATTORNEY-IN-FACT | 2. | | |

| 7540-01-152-8050<br>edition not usable | EXPIRATION DATE: 9-30-95 | 25-107 | STANDARD FORM 25 (REV. 1-90)<br>Prescribed by GSA — FAR (48 CFR) 53.228(b) |